UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION LOCAL 21,<br><br>Plaintiffs,<br><br>v.<br><br>MARK S. NELSON, the Sherriff of Cowlitz County in his official and individual capacity, JIM DUSCHA, a City of Longview Police Chief in his official and individual capacity, COWLITZ COUNTY, CITY OF LONGVIEW and DOES 1-100,<br><br>Defendants. | CASE NO. 3:11-CV-05767-RBL<br><br>ORDER DENYING DEFENDANTS' MOTION TO COMPEL |

## INTRODUCTION

The interrogatories that are the subject of this motion to compel generally can be characterized as "contention interrogatories" – that is, interrogatories that ask for all evidence regarding the various allegations set forth in the complaint. Such

interrogatories are a favorite tool of defendants, who certainly recognize the difficulty they pose for plaintiffs, and often are despised by plaintiffs, who too often choose to respond with general and specific objections, and sometimes little real information. These are the kind of interrogatories that regularly are the subject of just the sort of discord that is evident here. They need to be answered, but those answers rarely satisfy anyone -- least of all the parties who ask the questions and the parties who provide the answers. It is into this contentious situation that this Court now ventures.

## BACKGROUND

Plaintiffs are an international labor union and a local labor union (see Complaint, ECF No. 1, at ¶¶ 4-5). Defendants include a city; a city police chief; a county; a county sheriff; and other un-named defendants[1] (id. at ¶¶ 6-15).

Plaintiffs allege that they engaged in First Amendment activity in connection with an ongoing labor dispute (see id. at ¶¶ 1, 16-39). Plaintiffs allege that in response to such activity, Defendants conducted a campaign to harass and intimidate, as well as to interfere with Plaintiffs' alleged First Amendment activity (id.). Plaintiffs have alleged that Defendants' campaign resulted in violation of Plaintiffs' civil rights by, among other

---

[1] Defendants filed a Motion to Dismiss on October 31, 2011 and Plaintiffs' response was filed on November 28, 2011 (see ECF Nos. 24, 25). Defendants' Reply in Support of their Motion to Dismiss was filed on December 2, 2011 (see ECF No. 26). On February 29, 2012, Plaintiffs filed a Motion for Leave to File a First Amended Complaint and to Add Additional Defendants (see ECF No. 32). Defendants have responded to this Motion (see ECF No. 33), and Plaintiffs' Reply in support of their Motion for Leave to Amend was filed on March 16, 2012 (see ECF No. 37). Neither one of these motions is before this Court, and neither one is considered for purposes of ruling on this motion to compel.

things, violating Plaintiffs' First, Fourth and Fourteenth Amendment rights (see id. at ¶¶ 40-55; see also Joint Status Report, ECF No. 28, at p. 2).

## PROCEDURAL HISTORY

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judges' Rules MJ1 and MJ3. This matter is before the Court on a Motion to Compel Answers to First Interrogatories by Defendants, CITY OF LONGVIEW (hereinafter "Defendant Longview") and JIM DUSCHA, a City of Longview Police Chief in his official and individual capacity, (hereinafter collectively "The City Defendants") and has been fully briefed (see ECF Nos. 34, 39, 42; see also Declaration of Donald L. Law in Support of Defendant Longview's Motion to Compel, ECF No. 35; Second Declaration of Donald L. Law in Support of Motion to Compel filed by Defendants City of Longview and Jim Duscha).

Plaintiffs filed a Complaint in this Court on September 22, 2011 (see ECF No. 1). Plaintiffs allege in paragraph 1 of their Complaint that:

> In response to the ILWU's and its members' largely peaceful exercise of their speech and associational rights, Cowlitz County, its Sheriff Mark S. Nelson, the City of Longview and its Police Chief Jim Duscha have initiated a campaign of harassment, assault and intimidation against the ILWU, its officers and members in an effort to terrorize them and their supporters into silence, to retaliate against their public actions, to improperly support and aid EGT in its labor dispute with ILWU, for personal retribution, and to impose Defendants' own measure of punishment (by means of excessive and unwarranted brutal arrest procedures) for perceived "crimes" without due process of law.

(ECF No. 1, ¶ 1).

Plaintiffs then allege a number of specific instances of alleged harassment, without providing names of the alleged participants and, in some instances, without dates or locations of the alleged incidents (see generally, ECF No. 1, ¶¶ 22 – 34). After providing this list of alleged incidents, Plaintiffs allege that: "The incidents described above are a non-inclusive list and are part of the Defendants' campaign and policy of harassment, intimidation and wrongful acts against the ILWU, their respective officers and members" (id. at ¶ 35).

The parties conducted the Fed. R. Civ. P. 26(f) Conference on November 18, 2011, and on December 15 and 19, 2011, completed their Fed. R. Civ. P. 26(a)(1) Initial Disclosures (see Declaration of Donald L. Law in Support of Motion to Compel, ECF No. 35, at 30-38; Joint Status Report, ECF No. 28, at 3, 4).

On November 18, 2011, Defendant Longview served both Plaintiffs with a first set of interrogatories (see Joint Status Report, ECF No. 28, at 4):

**Interrogatory No. 1:**

Defendant Longview requested that Plaintiffs "identify the arrestees and any witnesses for the incidents described in paragraphs 23, 25, 27, 29, 33" of the Complaint (see Declaration of Donald L. Law in Support of Motion to Compel, ECF No. 35, at 7).

**Interrogatory No. 2:**

For Interrogatory number two, Plaintiffs were asked to "identify any 'incidents,' other than those alleged in paragraphs 22-34 of the Complaint, which are claimed to have been 'part of the Defendants' campaign and policy of harassment, intimidation and

wrongful acts against the ILWU, their respective officers and members,' as alleged in paragraphs 35 of the Complaint" (id. at p. 7).

**Interrogatory No. 3:**

For Interrogatory number three, Plaintiffs were asked to "identify any incidents which comprise 'Defendants' campaign of excessive force and intimidation against the ILWU, and their respective officers and members,' as alleged in paragraph 38 of the Complaint" (id.).

**Interrogatory No. 4:**

For Interrogatory number four, Plaintiffs were asked to "identify any 'incidents where employees of the Defendants 'engaged in . . . . following and roughing up individuals wearing clothes bearing the ILWU name or logo and/or driving vehicles marked with ILWU name or logo,' as alleged in paragraph 20 of the Complaint" (id., at p. 8).

**Interrogatory No. 5:**

For Interrogatory number five, Plaintiffs were asked to "identify any 'incident in which a Local 21 officer or other representative contacted an employee of Defendant Longview proposing that 'they work with Local 21 to arrange for members with outstanding warrants to present themselves to be peacefully taken into custody,' as alleged in paragraphs 22 and 26" (id.).

Defendant Longview also requested that Plaintiffs provide the date, location, names of witnesses and a short description of what happened with respect to "any incidents identified in answer to Questions No. 2, 3, 4 and 5" (id., at p. 7).

On December 21, 2011, Plaintiffs responded to Defendant Longview's First Interrogatories.[2] The first 5 pages of these responses were mostly what appear to be "boiler plate" general objections (ECF No. 35, Exhibit 2A, pp. 1 -5), followed by "Specific" objections to each of the interrogatories. These "Specific" objections are largely identical for each of the interrogatories (id. at pp. 7 – 11).[3] Finally, after this legal "throat clearing" plaintiff provided the following responses:

**Response to Interrogatory No. 1:**

> Subject to and without waving the General Objections, Plaintiffs responds as follows: As set forth concurrently in the Answer, the arrestees for the incidents described in paragraphs 23, 25, 27, 29, and 33 of the Complaint for Violations of Civil Rights ("Complaint") are: Shelly Porter, Darin Norton, Randy Johnson, and Jake Whiteside. The arrestees also include: Byron Jacobs. Witnesses for those incidents, include, but are not limited to close family members, friends, day care providers, neighbors, and current and former colleagues of the arrestees. The individuals and entities identified in Plaintiff's initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) also are likely to be witnesses to these incidents. Plaintiffs are continuing to investigate and will promptly supplement this response when Plaintiffs have additional information. Plaintiffs will also promptly supplement with any other relevant, responsive, non-privileged information obtained during discovery.

(id., at pp. 19-20) (internal citations omitted).

**Response to Interrogatory No. 2:**

> Subject to and without waving the General Objections, Plaintiffs respond as follows: As set forth in the Complaint, Plaintiffs allege that defendant engaged in a multi-faceted and comprehensive campaign to interfere with and ultimately silence the First Amendment activity

---

[2] Although interrogatories were sent to each plaintiff separately, the interrogatories were identical and plaintiffs chose to respond jointly (see ECF No. 35, Exhibit 2A).

[3] Despite the voluminous briefing for this motion, these objections largely are ignored by both sides. Therefore, they will not be the subject of further discussion, except as they may be consistent with the ruling on the substance of the responses.

conducted by Plaintiffs in connection with Plaintiffs' labor dispute with Export Grain Terminal, LLC ("EGT"). The campaign, as alleged includes, *inter alia*, abusive, post-incident physical arrests, refusals to terminate the abusive arrests, conduct during demonstrations, subjecting ILWU members to surveillance, and other harassment of ILWU members. Plaintiffs will promptly supplement this response with any other relevant, responsive, non-privileged information obtained during discovery.

(id., at p. 21) (internal citations omitted).

**Response to Interrogatory No. 3:**

Subject to and without waving the General Objections, Plaintiffs respond as follows: As set forth in the Complaint and Plaintiffs' Opposition to the county and Nelson's Motion and Memorandum in Support of Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 25), the incidents as well as the specific attendant policies and procedures that presently comprise Defendants' campaign and policy against Plaintiffs include, but are not limited to: (1) The abusive, post-incident physical arrests. See Pls. Opp. Dismiss at 4-5; (2) The refusals to terminate the abusive arrests. See id. at 5; (3) The conduct during demonstrations. See id. at 5-6; and, (4) Subjecting ILWU members and supporters to surveillance. See id. at 6. The dates, locations, and contested descriptions of "what happened" are set forth in the Complaint and the Answer. See, e.g., Answ. ¶¶ 23-25, 29, 33-34. Witnesses for the incidents alleged in the Complaint, include, but are not limited to, close family members friends, day care providers, neighbors, and current and former colleagues of the arrestees. The individuals and entities identified in Plaintiffs' initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) also are likely to be witnesses to these incidents. Plaintiffs are continuing to investigate and will promptly supplement this response when Plaintiffs have additional information. Plaintiffs will also promptly supplement with any other relevant, responsive, non-privileged information obtained during discovery.

(id. at 22-23).

**Response to Interrogatory No. 4:**

    Subject to and without waving the General Objections, Plaintiffs respond as follows: As set forth in the Complaint, Plaintiffs allege that defendant engaged in a multi-faceted and comprehensive campaign to interfere with and ultimately silence the First Amendment activity conducted by Plaintiffs in connection with Plaintiffs' labor dispute with EGT. One key component of Defendant's campaign, as alleged includes subjecting Local 21 officers, members, supporters, and their families and friends to surveillance. For example, on September 14, 2011, ILWU supporters James and Elaine Coffman, the parents of Local 21 President Dan Coffman, were driving a car owned and usually operated on a daily basis by President Coffman. They were driving back to Longview from Portland, Oregon. As soon as they drove into Longview, a Longview Police Department ("LPD") vehicle began following them. The vehicle followed them all the way into town on Tennant Way. At the corner of Baltimore and Oregon Way, the vehicle pulled directly next to President Coffman's car. An LPD officer looked into the care and saw James and Elaine Coffman. The LPD vehicle then stopped following them and drove away. Additionally, Defendants subjected President Coffman's son and daughter-in-law to surveillance. In late August, President Coffman's daughter-in-law Janea Coffman saw at least one of Defendants' marked vehicles, but sometimes two vehicles, either parked outside of the home she shares with her husband, Local 21 member Broc Coffman, or parked a short distance down the street from their home. These vehicles would remain parked for two or three hours at a time. This surveillance occurred daily over four to five days. Plaintiffs are in the process of confirming a number of other incidents of surveillance. Plaintiffs will promptly supplement this response with those incidents and with any other relevant, responsive, non-privileged information obtained during discovery.

(id., at 23-24).

**Response to Interrogatory No. 5:**

    Subject to and without waving the General Objections, Plaintiffs respond as follows: Plaintiffs made multiple attempts to contact Longview through Nelson and the County. Such attempts are identified in the Complaint and the Opposition. See Pls. Opp. Dismiss, at 5. Plaintiffs will promptly supplement this request with any relevant, responsive, non-privileged information obtained during discovery.

(id., at 25).

The parties filed their Joint Status Report on December 22, 2011 (ECF No. 28). As indicated in the parties' Joint Status Report, the parties agreed to "exchange documents informally and to work together in order to streamline discovery" (see id., at 6). At this time, Defendants indicated their position that:

> [T]he Complaint makes vague allegations about the incidents of misconduct by the Defendants. See, in particular, paragraphs 20, 22, 26, 35 and 38. Having these incidents clearly identified will facilitate more structured and efficient discovery for both sides of this case. Defendant Longview has already served interrogatories on this subject. The answers received, as well as Plaintiffs' Initial Disclosures, will result in a motion to compel by the Defendants unless issues are not resolved per FRCP 37(a)(1).

(Id. at p. 7).

A Fed. R. Civ. P. 37(a)(1) conference was held on January 3, 2012 (see Motion to Compel, ECF No. 34, at 3). On January 10, 2012, Plaintiff agreed to supplement their Interrogatory Responses by January 17, 2012 (see Motion to Compel, ECF No. 34, at 3). On January 17, 2012, Plaintiffs provided via email First Supplemental Responses to Defendant Longview's First Interrogatories (see Motion to Compel. ECF No. 34, p. 3; see also Declaration of Donald L. Law in Support of Motion to Compel, ECF No. 35, at Exhibit 4). These supplemental responses provided names of witnesses and some dates for additional incidents, but failed to identify certain witnesses and dates because plaintiffs claimed that "Plaintiffs' investigation are [sic] ongoing" (ECF No. 35, Exhibit 4, p. 4).

On January 18, 2012, counsel for Defendant Longview emailed attorneys of record for Plaintiffs, arguing that Plaintiffs' First Supplemental Responses were deficient

(see Motion to Compel, ECF No. 34, Exhibit 5). This e-mail set forth specific questions to Plaintiffs' counsel, seeking clarification and further detail (id.). Plaintiffs agreed to supplement again their Responses to Defendant Longview's First Interrogatories (Declaration of Donald L. Law in Support of Motion to Compel, ECF No. 35, at Exhibit 7).

However, other litigation involving the EGT facility had settled, and the parties agreed to put this case "in hiatus" for a few weeks (Motion to Compel, ECF No. 34, at 4). Subsequently, Plaintiffs suggested March 9, 2012 as the due date for further supplemental responses to Defendant Longview's First Interrogatories, and on March 9, 2012, Plaintiffs' Second Supplemental Responses were sent via email to Defendant Longview (id. at Exhibit 10B). These responses included a few more witnesses, but concluded each response with "Plaintiffs have no supplementation at this time. Discovery and Plaintiffs' investigation are ongoing" (id.).

Following submission of Plaintiffs' Second Supplemental Responses, the following email exchange occurred between counsel for Plaintiffs Jennifer Lai, Esq. ("Lai") and counsel for the City Defendants Donald Law, Esq. ("Law"):

> Lai: Attached please find a copy of our second supplemental responses to Longview's interrogatories. Let me know if you have questions. March 9, 2012, 3:38 p.m.
>
> Law: I was going to tell you to expect a motion to compel, but this goes beyond that remedy. I will be pondering what to do over the weekend. At least for now opposing your motion for leave to amend is back on the table. March 9, 2012, 4:27 p.m.
>
> Lai: Thanks for speaking with me by phone last week Friday. As we discussed, let us know what specific information you think is

|   |   |   |
|---|---|---|
| 1 | | missing from our supplemental interrogatory responses. March 12, 2012, 9:39 a,m. |
| 2 | | |
| 3 | Law: | Hello! Take a look at my January 18, 2012 email to you, Eleanor and Mike. March 12, 2012, 9:51, a.m. |
| 4 | | |
| 5 | Lai: | Your January 18 email references the deadline for your responses to our interrogatories. As discussed in a previous email, plaintiffs have no disagreement with your proposed April 21 deadline for response to our interrogatories. As for our supplemental interrogatory responses, once again, let us know what specific information you think is missing. March 12, 2012, 10:15 a.m. |
| 6 | | |
| 7 | | |
| 8 | Law: | This really isn't a game. It's a serious matter. Look at the January 18, email around noon. My computer shows 12:06, although we all know they will vary. That email will be Exhibit 3 for my motion to compel. March 12, 2012, 10:33 a.m. |
| 9 | | |
| 10 | | |
| 11 | Lai: | This is all we have from you on January 18: . . . . To iterate for a third time, please tell us what specific information you think are missing. Feel free to call me to discuss. March 12, 2012, 10:42 a.m. |
| 12 | | |
| 13 | Law: | Well, you had better take another look and while you are at it, take a look at the email string on January 19 ending with my email to Eleanor, which begins 'Ok. You have until February 10' In particular, look at her email response to me, copied to you, where she said, 'Yes. That's correct.' Finally, look at the question that she is answering. March 12, 2012, 11:01 a.m. |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | Law: | Folks. This is spiraling into a very serious problem. March 12, 2012, 11:19 a.m. |
| 18 | | |
| 19 | Lai: | Once again, if your problem is with the substance of our March 9 second supplemental interrogatory response, Plaintiffs simply want to know what exact information you think you are missing at this stage of the case. If this is easier to clarify by phone rather than email, please call me. March 12, 2012, 11:39 a.m. |
| 20 | | |
| 21 | | |

(Declaration of Donald L. Law in Support of Motion to Compel, ECF No. 35, at Exhibit 11). Plaintiffs appear to have provided the City Defendants with further clarification on March 12, 2012, after subsequently finding the much-discussed January 18 email (see id.

at Exhibit 12; see also Response, ECF No. 39, at 3). This e-mail provided specific answers to Defendants' counsel's questions, although Plaintiffs' counsel also indicated that she would "follow up with a formal supplemental response" (ECF No. 35, Exhibit 12). Plaintiffs' counsel again made clear that this was all the information that they had at that time and that investigation was continuing (id.).

Apparently, no further discovery conferences took place. The City Defendants filed a Motion to Compel Answers to First Interrogatories just two days later, on March 14, 2012 (see ECF No. 34). The City Defendants made no further efforts to identify how or why the responses, as supplemented, were insufficient. Nor does the motion identify particular issues for this Court to resolve. Instead, Defendants simply ask this Court to order Plaintiffs "to fully answer" the interrogatories. And, Defendants ask for attorney fees and costs. Id.

Plaintiffs responded to the City Defendants' Motion to Compel on March 28, 2012 (see ECF No. 39). The City Defendants filed their Reply in Support of their Motion to Compel on April 3, 2012 (see ECF No. 42).Plaintiffs contend that Defendants intentionally hampered Plaintiffs' ability to provide more complete responses at this time by withholding records responsive to Plaintiffs' discovery requests (see Response, ECF No. 39, at 4-5). Plaintiffs' also contend that The City Defendants failed to meet and confer in good faith regarding Plaintiffs' allegedly deficient responses (see id., at 6-7). Although a 37(a)(1) conference was held on January 3, 2012, The City Defendants admit that Plaintiffs provided First and Second Supplemental Responses to the interrogatories subsequent to the conference (see Motion to Compel, ECF No. 34, pp. 3-4). Plaintiffs

argue that although they repeatedly asked Defendant Longview to specify what further information was requested, the City Defendants responded only by threatening to file a motion to compel (id., at 2-3, 6-7).

Finally, Plaintiffs contend that they have provided responses that are complete to the best of their knowledge (id., at 7-8). Plaintiffs argue that discovery is ongoing and that they will supplement their responses as they are able (see id., at 1).

## DISCUSSION

This detailed discussion of the procedural background illustrates that this motion has very little to do with the law and a lot more to do with the ability, or more precisely, inability of the parties to resolve discovery disputes without court intervention.

The first sentence in this Court's first order regarding discovery was that "All discovery matters should be resolved by agreement if possible" (ECF No. 3, Minute Order Regarding Discovery and Depositions). In that Order, the Court also noted that the conduct of the parties in pretrial matters should be guided by the provisions of the Code of Pre-Trial Conduct published by the American College of Trial Lawyers (id. at ¶ 1). Among other things, that Code sets forth the following requirement for discovery practice:

> (4) When a discovery dispute arises, opposing lawyers must attempt to resolve the dispute by working cooperatively together. Lawyers should refrain from filing motions to compel or for court intervention unless they have generally tried, but failed, to resolve the dispute through all reasonable avenues of compromise and resolution.

American College of Trial Lawyers Code of Pre-Trial and Trial Conduct, at p. 8, Discovery, Discovery Practice Sec. (a)(4), *available at* www.actl.com (Publications), e.g.,

http://www.actl.com/AM/Template.cfm?Section=Publications&content=2009
2&template=/cm/contentdisplay.cfm&contentfileid=963 (last retrieved April
6, 2012).

The actions of both parties in this matter fall short of these standards.

The "meet and confer" requirement is not intended to be an obstacle, but rather a vehicle. Counsel's responsibility is not to send an email, have a meeting, and then check the box indicating that they have conferred "in good faith." Rather, counsel are required to make a reasonable attempt to determine if solutions can be found to difficult discovery issues. For the most part, that has not been done here. Fault is shared by all parties, and is not limited to one side or the other.

While the Court finds that the parties have not met the "meet and confer" requirements set forth above, the following guidelines are intended to provide some assistance so that the parties can resolve future disputes without court intervention.

1. <u>Parties are required to provide full responses.</u>

Rule 26(b)(1) states, in part "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Although contention interrogatories can be difficult to answer, they must be answered. Providing "examples" of incidents that are responsive is insufficient (<u>see, e.g.,</u> Response to Interrogatory No. 4, ECF No. 35, Exhibit 2A). Nor is it sufficient for the responses to reference the complaint or other documents as if the mere reference is enough, when more specific information is requested (<u>see, e.g.</u> ECF No. 36, Exhibit 2A, pp. 1-5). It likewise is not sufficient to "identify" witnesses by referencing generally "close family members, friends, day care providers, neighbors, and current and former colleagues of the

arrestees" (id. at pp. 19-20).  Nor is it sufficient to give a few names and general descriptions and then set forth a proviso that the witnesses "are not limited to" those persons.  Nor is it sufficient to state that incidents occurred "at various times".  If, in fact, the party is aware of specific instances, then those instances should be identified individually by date, if the responding party knows the date.  Nor is it sufficient for a party to respond that the information needed to answer the discovery request is readily available to the other party; if the party responding to discovery has information, then that information should be disclosed, unless the parties agree that it need not be disclosed because the requesting party already has the information requested.  (Such an accommodation should be discussed in the course of a discovery conference held in good faith.)

Ultimately, Plaintiffs shed most of these obfuscations and appear to have provided all the information that was available to them.  Defendants have failed to identify what additional information, if any, they contend is missing.  Had these answers been forthcoming from the beginning, Defendants' counsel may have been more amenable to resolving these disputes without court intervention.  Had Defendants identified additional areas of inquiry and conducted another discovery conference, Plaintiffs' counsel may have been in a better position to respond.  None of those things occurred here.

2. <u>A responding party need not provide information it does not have.</u>

In a perfect world, complete and specific answers to detailed questions can be provided from the onset of litigation.  It is not unusual, however, for a party to have incomplete information that may or may not become available throughout the course of

the case. Fed. R. Civ. P. 26(e)(1)(A) provides, in part, that a responding party is required to supplement responses to discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if additional or corrective information has not otherwise been made known to the other party during the discovery process or in writing . . . ." In this instance, Plaintiffs repeatedly advised Defendants that they would "promptly supplement" their responses as other information became available (see, e.g., ECF No. 35, Exhibit 2A, pp. 19-25). Defendants remained unsatisfied with this response (see ECF No. 42). Seeking an order from the Court compelling Plaintiffs to provide information that Plaintiffs state they do not have is not an appropriate use of a discovery motion.

    3.  <u>Attorney's fees will not be awarded when both sides are at fault.</u>

Rule 37(a) gives the court discretion to award attorney's fees. For the reasons outlined above, the Court finds that both parties contributed to the necessity for court intervention. Therefore, the Court concludes that neither party should be awarded attorneys' fees and costs.

If the parties have a legitimate dispute regarding a specific discovery issue that needs to be resolved by the Court, this Court remains available to resolve those disputes. Instead, after considering each of the submission by all parties, this Court is unable to discern a single "issue" so far that cannot be resolved by following the guidelines set forth above.

The parties are encouraged to review carefully the Minute Order regarding Discovery and Depositions (ECF No. 3) again. As this matter now has been referred to

1 the undersigned for purposes of resolving discovery issues, it should be noted by all
2 parties that should either side request a joint call to chambers for an expedited ruling by
3 telephone conference, then this request should be made to the undersigned, rather than to
4 the District Judge. Chambers telephone number is (253) 882-3780.

Dated this 6th day of April, 2012.

_____
J. Richard Creatura
United States Magistrate Judge